# Frank versus Colhoun et al.

1. The court below is the most competent to interpret its own rules.
2. A commissioner to take depositions exercises the power of the court itself in swearing witnesses.
3. The authority of the court to appoint a commissioner to take depositions of witnesses, arises from Article 5, § 6 of the Constitution, in relation to perpetuating testimony, &c.
4. Every commission when in proper form, authorizes the commissioner to call witnesses before him, and examine them on oath.

[Frank *v.* Colhoun.]

5. The defendants in 1866 bought goods from plaintiffs—" Liverpool test, monthly shipments from Liverpool to Philadelphia, * * at 3¼ cents per pound, cash, gold coin, on vessel in Philadelphia." *Held,* to be payable in gold or its equivalent.

6. Parties can take themselves out of the operation of the Legal Tender Law after its passage by contracting for payment in coin alone.

7. The intention of Congress was not to prevent contracts in specific things, whether coin or chattels, but to make treasury notes lawful money for payment of debts, when not forbidden by law or express contract.

November 5th 1868.    Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.  READ, J., absent.

Error to the Court of Common Pleas of *Allegheny county:* Of October and November Term 1868, No. 101.

In the court below this was an action of assumpsit, commenced August 3d 1867, by George Colhoun and another, trading as Colhoun & Edwards, against William Frank. ₅The plaintiffs filed a copy of their account and an affidavit of their claim under the 5th rule of the Court of Common Pleas, which is in these words :

" If the plaintiff shall file, with his præcipe, a specification of the items of his claim, and statement of facts necessary to support it, verified by affidavit, such items of the claim and material averments of fact as are not directly traversed or denied by the affidavit of defence, shall be taken as admitted ; and, in appeals from justices, the specification and statement may be filed with, or before, the declaration.

" The same rule shall apply to a specification of set-off, and statement filed by the defendant.   The plaintiff's counter-affidavit to be filed in ten days after notice."

The account was as follows :—

| " 1867. | | Currency. | Gold. |
|---|---|---|---|
| June 28, | To 36 casks Johnston's soda ash, 57,602 lbs., at 3¼ cts., . | | $1,872.06 |
| | Drayage in Philadelphia, . | $27.00 | |
| July 5, | " 35 casks Johnston's soda ash, 56,280 lbs., at 3¼ cts., . | | 1,829.10 |
| Aug. 3, | " Cash paid expenses on sale of 35 casks of Johnston's soda ash, marked " E," as follows : | | |
| (Here follow the items of expenses.) | | 125.28 | . |
| | | $152.28 | $3,701.16" |

The defendant was credited with the sale at auction by plaintiffs of the 35 casks of soda ash : to the balance was added the premium on gold, showing $3173.98 still due the plaintiffs.

The affidavit of claim, &c., was as follows :—

"Plaintiffs, on the 22d day of November 1866, sold to William

[Frank v. Colhoun.]

Frank, defendant, 150 tons Johnston's carbonated soda ash, 48 per cent. strength, Liverpool test, upon certain terms and conditions which fully appear in a written memorandum of the contract dated November 22d 1866, a correct copy of which is to this affidavit annexed, and made part of the same. Under the agreement, plaintiffs proceeded to deliver said soda ash to defendant, and in all respects they have fully complied on their part with the terms and conditions of said contract, although said defendant has failed on his part to comply with said terms and conditions.

"Plaintiffs say that the shipment of soda ash mentioned in the annexed bill of particulars, June 28th 1867, 36 casks, net 57,602 lbs., was delivered by said plaintiffs to said defendant, and received by him. They further say that the shipment of soda ash mentioned in the annexed bill of particulars, July 5th 1867, 35 casks, net 56,280 lbs., having duly arrived according to contract, said plaintiffs duly notified said defendant of the arrival, and that they were ready to deliver the same to defendant according to agreement, but said defendant refused to receive said soda ash, and refused to pay for the same, and still does neglect and refuse to pay for the same.

"Defendant, having refused to receive said soda ash and pay for the same, the plaintiffs notified him that they would sell the same at public auction in the city of Philadelphia, at defendant's risk, and for his account, and at his costs and charges.

"And accordingly said plaintiffs, having first given said defendants due and timely notice of the time and place when and where they would sell said soda ash at public auction, said plaintiffs at said time and place did sell said soda ash in the city of Philadelphia, and placed the proceeds of said sale to defendant's credit, as appears on the annexed bill of particulars.

"Plaintiffs further say that the agreement with defendant was, that he should make all payments for said soda ash, cash, gold coin, ex vessel in Philadelphia, as appears by the memorandum of agreement copy hereto annexed. And they therefore claim," &c.

The memorandum mentioned in the agreement is as follows:—

"Bought of Colhoun & Edwards, 150 tons Johnston's carbonated *soda ash*, 48 per cent. strength, Liverpool test, monthly shipments from Liverpool to Philadelphia, say 25 tons per month, from January to July 1867, both inclusive, at *three and one-quarter cents* per pound, cash, *gold coin*, on vessel in Philadelphia. Manufacturers' deliveries to sellers to be accepted by buyers. In case of accident by fire or otherwise, thereby preventing the manufacturers from furnishing the ash, this contract, during the time of such inability, to be of no force, but if in operation again, during the above-mentioned months, the deliveries for the unexpired time to be resumed. Should there be any change in the present rate

[Frank *v.* Colhoun.]

of duty, the buyers to pay any increase, and be paid any decrease in the dutiable funds. Each shipment to be a separate sale at invoice weights and tares. In case of sea damage, the damaged portions to be rejected, and sound accepted. Names of vessels to be given when received.          WILLIAM FRANK.

" Pittsburg, Nov. 22d 1866."

The affidavit of defence was : " That affiant, who is in the glass business, is compelled to use large quantities of soda ash ; that he, for a long time, has been in the habit of buying the same from plaintiffs ; that the brand he has been in the habit of buying from plaintiff is known as the ' Hutchinson's' brand ; that a short time before 22d November 1866 Mr. Colhoun came to affiant's warehouse and asked affiant to buy some ash, who asked him what brand ; Mr. Colhoun replied, ' Johnston's.' Affiant replied, he wanted no other brand than ' Hutchinson's ;' that he knew that it was good, and was satisfied with it ; that to this Mr. Colhoun of plaintiffs, replied that he would guaranty Johnson's was as good, if not better than the Hutchinson's ; upon these representations, and upon these alone, affiant bought of plaintiffs the ' Johnston' brand, as claimed ; that he was at the time of the purchase wholly ignorant of the character and quality of this ash, and was compelled to rely, and did rely implicitly, upon the representations of Mr. Colhoun ; that upon trial affiant discovered that it was utterly useless to him and wholly unfit for his business, and was exceedingly injurious to his wares, &c., and damaging largely the character of affiant as a manufacturer in the market ; upon discovering this, affiant at once notified plaintiffs of its character, that he could not use what plaintiffs had given him, and would receive no more of it under the contract ; also, that he would return to plaintiffs the amount already delivered by them, which they declined absolutely to receive ; that affiant then notified plaintiffs that he would retain it under protest ; that upon July 2d ult., affiant notified plaintiffs by written notice," &c. The notice was of the facts stated in the affidavit.

On the trial before Stowe, J., the plaintiffs gave in evidence the contract between the parties. They then offered their bill of particulars as filed. The defendant objected on the ground that the bill was not within the rule of court. The evidence was admitted and a bill of exceptions sealed. The plaintiffs then rested.

The defendant gave evidence for the purpose of proving the warranty, and that the ash was not such as it had been represented by the plaintiffs to be.

In rebuttal, the plaintiffs proposed to read deposition of Henry O. Carnegie, taken before a commissioner of the city of Liverpool, England, under a commission from this court, &c., 20th December 1867.

[Frank v. Colhoun.]

The offer was objected to by the defendant on the ground that the commissioner had no power to administer the oath to witness.

The deposition was admitted and a bills of exceptions sealed.

The plaintiffs submitted this point:—

"Under the contract in this case the defendant is responsible to pay for the soda ash in what would make the payment equal to gold;" which the court affirmed.

The defendant asked the court to charge:—

"If the plaintiffs are entitled to recover anything, the jury should exclude from plaintiffs' claim the difference between gold and legal tender currency."

In answer the court charged:—

"If the plaintiffs are entitled to recover for the ash sold to defendant, you must give them the contract price in gold, and your verdict should be what the gold was in currency at the time it was delivered or tendered."

The verdict was for the plaintiffs for $2906.43.

The defendant having taken a writ of error, assigned for error the admission of the evidence objected to, and the answers to the points respectively.

*Kirkpatrick & Mellon*, for plaintiff in error, cited as to the plaintiffs being entitled to the equivalent of gold: Shollenberger v. Brinton, Mervine v. Sailor, Davis v. Burton, Kroener v. Calhoun, Sandford v. Hays, Graham v. Marshall, Laughlin v. Harvey, 2 P. F. Smith 9 *et seq.*; Act of Congress February 25th 1862, 12 Stat. 345.

*D. W. & A. S. Bell*, for defendants in error, cited on same point: Dutton v. Pailaret, 2 P. F. Smith 110; Mather v. Kinike, 1 Id. 425.

The opinion of the court was delivered, January 5th 1869, by

Agnew, J.—There was no error in admitting the plaintiffs' bill of particulars under the 5th rule of the court below. The items of claim were accompanied by a statement of facts in support of them, and the claim verified by affidavit. The allegation that there was not such a statement duly verified is 'a mistake of fact. Nor is the assertion that the facts stated by the plaintiffs were denied by the defendant, any more accurate. The affidavit of the defendant denies no material averments of the plaintiffs, but introduces new matter by way of defence, by asserting that the plaintiffs had guaranteed the quality of Johnston's soda ash to be equal to that of Hutchinson's, while in fact it was very inferior and injurious to their business. As to the interpretation of its rule, the court below is most competent to decide, and we discover

[Frank *v.* Colhoun.]

nothing in the language to convince us that the court erred in this opinion.

The objection to the deposition of Henry O. Carnegie is groundless. A commissioner to take depositions acts under the special authority of the court, and exercises the power of the court itself in the swearing of witnesses. The objection that the commissioner had no power to administer the oath to the witness, loses sight of the chancery origin of the practice in obtaining testimony by this means. The authority of the court is derived from the 6th section of the 5th article of the state Constitution, conferring the power of a court of chancery in relation to the perpetuation of testimony, and obtaining evidence from places not within the state: Hollister *v.* Hollister, 6 Barr 450; Patterson *v.* Greenland, 1 Wright 512.

The practice in chancery will be found minutely set forth in 1 Harrison's Ch. 305 to 336. The commissioner administers the oath, the form of which will be found on page 327. See also 2 Daniels' Ch. Pr. 924, § 3. The latter work has, however, more particular reference to the recent orders in chancery of the year 1845. Every commission, when in proper form, authorizes the commissioner to call the witnesses before him, and to examine them upon their oaths or affirmations: 1 Harrison's Ch. 309; Court Forms (Phila. 1828), p. 231. See also Vaughan *v.* Blanchard, 1 Yeates 175.

The next question is much more important, but we think has been settled by the decision in Dutton *v.* Pailaret *et al.*, 2 P. F. Smith 109, in which it was held by this court that a contract made since the passage of the Legal Tender Act for $3000 in gold coin of the United States, of the present standard weight and fineness, notwithstanding any law which now may or hereafter shall make anything else a tender in payment of debt, is solvable only in the coin specified. The contract in this case was made in 1866, payable in " cash, gold coin." The intention of the parties was certainly to exclude from payment everything but gold coin, and the reason is obvious—the contract being for an article of commerce imported from Liverpool directly to Philadelphia, and payable for " *ex vessel*" at the latter place. The distinction between contracts made before and since the passage of the Legal Tender Act was suggested by Woodward, C. J., in his opinion in the case of Graham *v.* Marshall, 2 P. F. Smith 105. In that case the contract ante-dated the Legal Tender Law, and the dissent of my brother Strong and myself was to so much of the opinion of the Chief Justice as applied the terms of the Act of Congress to special contracts payable in specific coin. But the power of parties to take themselves out of the operation of the law after its passage, by contracting for payment in coin alone, is as clear as their power to bargain for specific articles. It was not the inten-

[Frank *v.* Colhoun.]

tion of Congress to shackle the arms of trade by preventing contracts for specific things, whether coins or chattels, but to confer upon treasury notes the attributes of lawful money for the payment of debts, wherever not forbidden by law, or by the express contract of the parties.

Speaking for myself, I thought this interpretation of the law was applicable to express contracts for specific coin made .before the passage of the act, as well as to those made since: Shollenberger *v.* Brinton, 2 P. F. Smith 94. A majority of the court thought otherwise, and in the second opinion of the then Chief Justice above referred to, he stepped out of the immediate question to notice the interpretation which declined to apply the law to precedent contracts for coin. His argument that all prior contracts were "specie contracts," because nothing was a legal tender but coin, and therefore the Legal Tender Act could apply to none else, is an ingenious fallacy, founded upon the substitution of one thought for another, by calling it a specie contract—not because it was made so by the contract itself, but because by law nothing but specie could pay it. A contract to pay simply in so much money, having no reference to its kind, is not what is meant by a "specie contract," though it could have been made efficacious as such by a demand of gold or silver, then the only legal tender. But such a contract is solvable in whatever is legal money at the day of payment, and is therefore subject to any change in the money of the country by subsequent legislation; and by commercial usage was also payable in bank notes, recognised by consent as money when no other kind is demanded. But what we mean by a specie contract is one payable in specie by the express terms of the contract itself. It is an agreement in which the parties have taken away by consent the right of the debtor to pay except in the specified coin. It is just that contract of which it can be aptly said, *modus et conventio vincunt legem;* and therefore the Act of Congress should not be applied to it, unless the intention appears in the very act itself to override all such special agreements. Had this interpretation been given to the law, much of its alleged injustice and the consequent obloquy would not have attached to it. It was passed at a time of great public necessity, as a means, under the 19th clause of the 8th section of the 1st article of the Constitution of the United States, to make effective the express powers of borrowing money, paying debts and raising and supporting armies by the payment of men and the purchase of supplies to carry on the war to suppress insurrection: Shollenberger *v.* Brinton, 2 P. F. Smith 86.

Being extraordinary in its character, and justified only by the emergency which made it a means of executing express powers, it should have no interpretation beyond the necessity. Certainly

nothing in that aspect required it to override express agreements for payment in coin.

Speaking, therefore, for myself, I saw no reason to distinguish between contracts before and those after the law.

Finding no error in the record, the judgment is affirmed.